## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————————
                                            )
**WILLIAM THADDEUS ANDERSON,**              )
                                            )
         **Plaintiff,**                     )
                                            )
         **v.**                             )   **Civil Action No. 09-569 (ESH)**
                                            )
**U.S. DEPARTMENT OF STATE,**               )
                                            )
                                            )
         **Defendant.**                     )
—————————————————————————)


## <u>MEMORANDUM OPINION</u>

Plaintiff, proceeding *pro se*, has brought this action against the U.S. Department of State

("the Department") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  He seeks

to compel disclosure of a presentation that was the basis of a February 2003 speech to the United

Nations by former Secretary of State Colin Powell, as well as any communications related to that

presentation.  After searching its records, the Department found no responsive documents, and

now moves for summary judgment.  For the reasons stated, defendant's motion for summary

judgment will be granted.

### BACKGROUND

Plaintiff directed a FOIA request to the Department's Office of Information Programs

and Services on February 11, 2009.  (Am. Compl. ¶ 5.)  The request sought access to a

presentation on "intelligence on Saddam Hussein's regime in Iraq" that had been given by I.

Lewis Libby to Deputy Secretary of State Richard Armitage on January 25, 2003.  (*Id.*)  Plaintiff

also sought documents and communications "between the dates of January 24, 2003 and

February 3, 2003" that referred the presentation from files belonging to former Secretary of State Colin Powell, Armitage, and Lawrence Wilkerson, the former Department Chief of Staff.  (SJ Mot., Statement of Material Facts ("SOMF") ¶ 2.)  Plaintiff requested that the Department waive any processing fees under the "representative of the news media" exception.  (Am. Compl. ¶ 5 (citing 5. U.S.C. § 552(a)(4)(A)(ii)).)

On March 26, 2009, defendant filed a complaint requesting access to the records, a waiver of any FOIA fees, and costs.  The Department responded to plaintiff's FOIA request and denied his request for a fee waiver on April 28, 2009, (Def. Mot. for Summ. J. ["SJ Mot."], Declaration of Celeste Houser-Jackson ["Houser-Jackson Decl."], Ex. 2), and filed an answer to the complaint on May 4, 2009.  On June 30, 2009, the Department notified plaintiff that it had searched the Central Foreign Policy Records, as well as active and "retired" records from the Office of the Executive Secretariat, the Bureau of Near Eastern Affairs, the Bureau of Intelligence and Research, the Bureau of International Security and Nonproliferation, and the Office of the Coordinator for Counterterrorism.  Defendant found no responsive records. (Houser-Jackson Decl., Ex. 3.)

On July 31, 2009, defendant filed for summary judgment.  Its motion included an affidavit describing the search process from Celeste Houser-Jackson, acting director of the Office of Information Programs and Services.  (Houser-Jackson Decl. ¶ 1.)  The affidavit states that the Department began by searching the Central Foreign Policy File, which serves as a "centralized records system" and is the Department's "most comprehensive and authoritative compilation of documents."  (*Id.* ¶ 8.)  The file contains substantive documents that "establish, discuss, or define foreign policy" or "require action or use by more than one office," along with memoranda of conversations and interoffice contacts.  (*Id.*)  The Department searched for all

documents dating from January 24, 2003 to February 3, 2003, using the keyword "intelligence" with "Saddam," or "Hussein," or "Iraq," and with "Libby," or "Powell," or "Armitage," or "Wilkerson."  (*Id.* ¶ 9.)

The Department also searched active records maintained by the Office of the Executive Secretariat, the Bureau of Near Eastern Affairs, the Bureau of Intelligence and Research, the Bureau of International Security and Nonproliferation, and the Office of the Coordinator for Counterterrorism.  (Houser-Jackson Decl. ¶ 11.)  The search of the Secretariat's records used the keywords "Powell," "Hussein," "Libby," "Armitage," "intelligence" and "Wilkerson."  (*Id.* ¶ 12.)  The search of the Near Eastern records only used the term "Armitage."  (*Id.* ¶ 13.)  The search of the Intelligence and Research records used the terms "Hussein, Saddam" or "Iraqi government."  (*Id.* ¶ 14.)  The International Security search used the keywords "intelligence," "presentation," "Office of Special Plans," "Vice President," "Deputy," "Armitage," "Libby," "Feith," and "Shulsky."  (*Id.* ¶ 15.)  Defendant electronically searched the Counterterrorism files using the terms "Libby," "Armitage," "Powell," "presentation," and "briefing," and manually searched Counterterrorism's paper files on "Iraq-Terrorism."  (*Id.* ¶ 16.)  After plaintiff filed his brief opposing summary judgment, the Department again searched the records maintained by the Secretariat and Near Eastern and International Security bureaus and filed a declaration by the Department's Information and Privacy Coordinator providing additional information.  (Def.'s Reply, Declaration of Margaret P. Grafeld ["Grafeld Decl."] ¶¶ 1, 6.)  The additional searches of the Secretariat and International Security records used the terms "Iraq" and "Hussein," (*Id.* ¶¶ 7-8) and the search of the Near Eastern records used the keywords "presentation," "Libby," and "intelligence."  (*Id.* ¶ 9.)  Again, no responsive documents were found.

The Department also searched "retired" files – files that have not been needed by an office or bureau for several years – and manifests "document[ing] the contents of retired files" from the offices whose active records it searched.  (Houser-Jackson Decl. ¶¶ 17-19.)  The Houser-Jackson Declaration noted that these searches were performed by individuals "familiar" with the subject of the request and were limited to records "falling within the time period" of the plaintiff's request.  (*Id.* ¶¶ 18-19.)  The Grafeld Declaration contained additional information on the searches of the retired files.  (Grafeld Decl. ¶¶ 10-14.)  The Department first searched the retired records manifest for all records from the time period specified by plaintiff.  (*Id.* ¶ 10.)  Based on the results, defendant retrieved boxes with "potentially responsive" records.  It searched two boxes with "memorandum [sic] of" Powell's "conversation files" from July 1, 2002 to June 30, 2003, a box of Powell's country files (including a specific folder on Iraq), nine boxes of Powell's 2003 chronological files, and a box of Powell's 2003 schedules.  (*Id.* ¶¶ 10-11.)  It also searched two boxes of documents from Armitage's office, including a file on Iraq and weapons of mass destruction, and documents from Armitage's and Wilkerson's offices that have yet to be recorded on a manifest.  (*Id.* ¶ 12.)  Defendant searched two boxes of files from the Near Eastern bureau relating to Iraq political, economic, and assistance affairs, and retired subject files, country files and chronological files from the International Security bureau.  (*Id.* ¶¶ 12-14.)  None of the searches uncovered responsive records.  (*Id.* ¶ 15.)

## ANALYSIS

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings and evidence on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "In a FOIA case, summary

judgment may be granted to the government if 'the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *Fischer v. Dep't of Justice*, 596 F. Supp. 2d 34, 42 (D.D.C. 2009) (quoting *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). The requester may challenge such a showing by "set[ting] forth specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), that would permit a reasonable jury to find in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). Agency declarations "are afforded a presumption of good faith;" an adequate affidavit "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2005). However, "if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980).

## II.  ADEQUACY OF THE SEARCH

Plaintiff argues that defendant inadequately described its search and that its search was inadequate because it failed to use certain keywords.[1]  (Pl.'s Opp'n at 4.)  To establish that it has conducted an adequate FOIA search, defendant must provide a "reasonably detailed" affidavit containing "search terms and the type of search performed, and averring that all files likely to

---

[1] Neither the Department nor plaintiff address the fee waiver issue.  "Courts have consistently confirmed that the FOIA requires exhaustion of this appeal process before an individual may seek relief . . . ."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61-62 (D.C. Cir. 1990).  "To the extent that the government is not raising an exhaustion-of-remedies defense with regard" to the fee waiver, "the Court may do so *sua sponte*."  *Hinojosa v. Dep't of Treasury*, No. 06-0215, 2006 WL 2927095, at *3 n.2 (Oct. 11, 2006).  In the fee waiver context, "[e]xhaustion does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees."  *Oglesby*, 920 F.2d at 66.  Here, plaintiff filed his complaint prior to paying the required fee or appealing defendant's refusal to waive.  Judicial review of his fee waiver claim is therefore precluded at this time.  *Id.* at 67.

contain responsive materials . . . were searched . . . to allow the district court to determine if the search was adequate in order to grant summary judgment." *Oglesby*, 920 F.2d at 68. The agency must demonstrate that, "viewing the facts in the light most favorable to the requester, . . . [it] 'has conducted a search reasonably calculated to uncover all relevant documents.'" *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (quoting *Weisberg*, 745 F.2d at 1485).

### A.  Description of the Search

Plaintiff argues that the Department has inadequately described its search of its "retired" files by failing to describe the manifests in detail and failing to explain how the records were searched. (Pl.'s Opp'n at 6-7.) To meet its burden of showing that its search was adequate, defendant's affidavit must "provide necessary details," such as "about the scope or methods of the searches conducted," *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91-92 (D.D.C. 2009), although it "need not 'set forth with meticulous documentation the details of an epic search for the requested records,'" *Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1980)). In response to plaintiff's argument, the Department conducted additional searches of the retired records and their manifests and submitted a second affidavit describing the search in greater detail. (Grafeld Decl. ¶¶ 10-14.) The Grafeld Declaration describes the general criteria used; the retired records searched, including the types of documents contained within the various boxes examined; and the search methods used by the Department. (*Id.*) It lists the date range searched and thoroughly describes the boxes found. The limited nature of the documents coupled with the specificity of the search and the detailed description of the records examined provide sufficient

detail about the scope and methods of the search,[2] and therefore allow the Court to conclude that

defendant's search was reasonably calculated to uncover all relevant documents.  Thus, the

Department has provided sufficient information for the Court to determine that the search of the

retired files was adequate.  *See Oglesby*, 920 F.2d at 68.

Plaintiff also challenges the Department's description of its search of the active records,

arguing that it is insufficient because it does not explain why the terms "Iraq" and "Hussein"

were not used in certain searches.  (Pl.'s Opp'n at 5-6.)  This Court has found summary judgment

inappropriate where the government's declaration "failed to document the search terms used" in

an electronic search.  *Aguirre v. SEC*, 551 F. Supp. 2d 33, 60 (D.D.C. 2008) (citing *Judicial*

*Watch, Inc. v. U.S. Dep't of Justice*, 185 F. Supp. 2d 54, 64 (D.D.C. 2002)); s*ee also Friends of*

*Blackwater*, 391 F. Supp. 2d at 120 (noting that the government's failure to "enumerate any

specific search terms used in examining the agency's electronic files" raised doubts about the

adequacy of the search).  Unlike the declaration found wanting in *Aguirre*, the Houser-Jackson

Declaration "describe[s] in detail *how* each office conducted its search."  *See Aguirre*, 551 F.

Supp. 2d at 61.  Defendant has described the various keywords and methods it used to examine

its electronic records, has listed all of the various databases it searched, and has averred that it

searched "any and all records systems reasonably expected to contain the information sought by

---

[2] The Department "examined the retired records manifests for records falling within the time period specified . . . .  Boxes containing potentially responsive retired records for these offices were retrieved . . . and their contents were thoroughly examined."  (Grafeld Decl. ¶ 10.)  "[A] defendant agency is obligated to conduct a 'reasonable' search for responsive records using methods which can be reasonably expected to produce the information requested by plaintiff to the extent it exists."  *Defenders of Wildlife*, 314 F. Supp. 2d at 8.  Manually searching the retired records without using specific search terms could reasonably be expected to produce the requested information given the limited scope of the request and the fact that those conducting the search were familiar with the request.  Defendant's description of this reasonable search in its affidavit was therefore sufficient.  *See Friends of Blackwater*, 391 F. Supp. 2d at 120 (suggesting that omitting search terms "alone might not be enough to invalidate an otherwise adequate affidavit . . . .")

the plaintiff." (Houser-Jackson Decl. ¶ 19.)  Plaintiff does not argue that defendant proceeded in

bad faith, nor does he offer any evidence that would call defendant's description of its search

into question.  Defendant has documented its search in sufficient detail to determine that its

search was adequate, and thus it has met its burden.  *See Oglesby*, 920 F.2d at 68.

### B.  Scope and Methods of the Search

Plaintiff also challenges the scope and methods of defendant's search.  Plaintiff first

argues that defendant's choice of keywords when searching the International Security and

Executive Secretariat records was inconsistent and not reasonably calculated to uncover all

relevant documents.  (Pl.'s Opp'n at 4-6.)  "[T]he adequacy of a FOIA search is generally

determined not by the fruits of the search, but by the appropriateness of the methods used to

carry out the search."  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

The Court applies a "'reasonableness' test to determine the 'adequacy' of search methodology,"

*Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998), and requires a "reasonable

and systematic approach to locating the requested documents," *Center for Pub. Integrity v. FCC*,

505 F. Supp. 2d 106, 116 (D.D.C. 2007).  An adequate search is one that "could . . . have been

expected to produce the information requested."  *See Pub. Citizen, Inc. v. Dep't of Educ.*, 292 F.

Supp. 2d 1, 6-7 (D.D.C. 2003).  Defendant's first affidavit explains that it searched records from

various bureaus using keywords related to the subject of the presentation and to the personnel

involved.  (Houser-Jackson Decl. ¶¶ 12-16.)  Defendant's second affidavit includes results from

additional searches of the International Security and Executive Secretariat records using the

keywords "Iraq" and "Hussein" (Grafeld Decl. ¶¶ 6-9), which are terms that had been suggested

by plaintiff.  (Pl.'s Opp'n at 5-6.)  Defendant's use of terms like "Iraq," "Hussein,"

"intelligence," and "presentation" in searching for a presentation on intelligence about Iraq was

reasonable and systematic and could be reasonably expected to produce the information requested.  *Cf. Pub. Citizen, Inc.*, 292 F. Supp. 2d at 7 (finding a search inadequate where the database was so unreliable that the agency could not reasonably expect to find the requested information).  Therefore, defendant adequately searched its records for references to the subject and participants of the presentation and for general references to presentations.  Defendant's search was sufficiently reasonable and systematic to satisfy its obligations under FOIA.

Plaintiff also argues that the search of the Near Eastern records was inadequate because it did not include the keywords "Iraq" or "Saddam Hussein" and only used the search term "Armitage."  (Pl.'s Opp'n at 5.)  Defendant's second affidavit asserts that it did a subsequent searched, using "Libby," "intelligence" and "presentation," and that using the terms "Iraq" or "Hussein" would unreasonably burden on the agency.[3]  (Grafeld Decl. ¶ 9.)   Because plaintiff seeks documents relating to a presentation of intelligence on Saddam Hussein's regime, defendant reasonably searched for references to "intelligence," and "presentation."  This search was both "reasonable" and "systematic," *Center for Pub. Integrity*, 505 F. Supp. 2d at 116, and could be reasonably expected to produce the requested information.  Plaintiff does not explain why it was necessary to search for the words "Iraq" and "Hussein" in a database filled with unrelated references to each, particularly when a search more narrowly tailored to his request had

---

[3] "Generally, an agency need not honor a FOIA request that requires it to conduct an unduly burdensome search."  *Pub. Citizen, Inc.*, 292 F. Supp. 2d at 6 (citing *Nation Magazine*, *Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 891-92 (D.C. Cir. 1995)).  However, the Department must "provide a sufficient explanation why a search . . . would be unreasonably burdensome;" merely claiming that a search would be "costly and take many hours to complete" is insufficient.  *Id.*  Defendant has stated that the Near Eastern bureau is generally responsible for U.S. relations with Iraq.  (Grafeld Decl. ¶ 9.)  Thus, it explained that using the terms "Iraq" or "Hussein" would uncover such a large volume of records that it would create an unreasonable burden and "would not reasonably be expected to produce the records Plaintiff seeks."  (*Id.*)  Because the Department's use of the terms "intelligence" and "presentation" was adequate to uncover any documents dealing with plaintiff's request, the Court need not consider whether the Department has established that using the terms "Iraq" and "Hussein" would be unreasonably burdensome.

already proven unfruitful.  A search is not inadequate merely because its terms are limited.  *See Defenders of Wildlife*, 314 F. Supp. 2d at 10 ("An adequate search may be limited to the places most likely to contain responsive documents.")

The Court has "little difficulty concluding that the [Department] made a 'good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'"  *Schoenman v. FBI*, 575 F. Supp. 2d 136, 151 (D.D.C. 2008) (quoting *Oglesby*, 920 F.2d at 68).  The Department's affidavits "describe in . . . detail what records were searched, by whom, and through what process."  *Steinberg*, 23 F.3d at 551-52. Defendant has adequately identified the keywords used in its search and has adequately explained, in reasonable detail, how it performed the searches.  *See Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (holding that defendant had failed to meet its burden where it had not identified terms searched or explained how it had conducted the searches).  Defendant asserts, and plaintiff does not contest, that it has searched through all record systems reasonably expected to contain the requested information.  (Houser-Jackson Decl. ¶ 19.)  Furthermore, defendant's second affidavit provides a detailed account of a thorough search by persons familiar with the retired files and with plaintiff's request.  The search was targeted in scope and by date and included manifests from the relevant time period, as well as files that had yet to be included in a manifest.  Plaintiff "has not offered evidence that would raise 'substantial doubt' as to the adequacy" of the searches and has not suggested that the Department acted in bad faith. *Williams v. Dep't of Justice*, 171 F. App'x 857 (D.C. Cir. 2005).  Defendant has therefore met its burden of proving that it has "fully discharged" its obligations under FOIA.  *Fischer*, 596 F. Supp. 2d at 42-43.

**CONCLUSION**

For the foregoing reasons, the Court finds no genuine issue of material fact presented on defendant's satisfactory response to plaintiff's FOIA request and concludes that defendant is entitled to judgment as a matter of law.  A separate Order accompanies this Memorandum Opinion.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   October 14, 2009